IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HOWARD "HOWIE" HAWKINS , et al., | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:20-cv-2781 |
| | : | |
| v. | : | Judge James L. Graham |
| | : | |
| | : | Magistrate Judge Chelsey M. Vascura |
| RICHARD "MIKE" DeWINE, et al., | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' MEMORANDUM OPPOSING DEFENDANTS' MOTION TO DISMISS
AMENDED VERIFIED COMPLAINT AND SUPPORTING PLAINTIFFS' AMENDED
MOTIONS FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY
INJUNCTION**

## I.      STATEMENT OF FACTS

As stated in the Amended Verified Complaint (Doc. 8), Plaintiffs Howard "Howie" Hawkins and Dario Hunter are independent candidates for election as President of the United States.  They are seeking to qualify for the November 3, 2020 general election ballot in the State of Ohio.  Amended Verified Compl., at ¶¶17-18 (Doc. 8, PageID #56).

Plaintiffs Joseph DeMare, Becca Calhoun, Nathaniel Lane, Brett Joseph, and Anita Rios are registered voters in the State of Ohio.  They are an experienced circulator of candidates' nominating petitions, has successfully gathered signatures to nominate candidates, and seek to do so for the November 3, 2020 general election in the State of Ohio.  They also seek to circulate, and gather signatures for, a petition to form the Green Party of Ohio as a minor political party under Ohio law.  They are in one or more high-risk categories subject to life-threatening complications from "COVID-19".  Amended Verified Compl., at ¶¶19-23 (Doc. 8, PageID #56-57).

[1]

Plaintiffs Hawkins and Hunter are hereinafter referred to as the "Independent Candidates". Plaintiffs DeMare, Calhoun, Lane, Joseph, and Rios are hereinafter referred to as the "Petition Circulators". Collectively, they are referred to as the "Plaintiffs".

In the 2018 general election held in the State of Ohio, the candidate for Governor nominated by the Green Party of Ohio failed to receive three percent (3%) of the total vote cast for this office. As a result, the Green Party of Ohio lost its minor party status in Ohio.[1] Its candidates for federal offices on the November 3, 2020 general election ballot are now required by the laws of the State of Ohio to run as independent candidates. Amended Verified Compl., at ¶28 (Doc. 8, PageID #58).

To qualify the above-named Independent Candidates for the November 3, 2020 general election ballot, their nominating petitions for election as President of the United States must be filed with the Ohio Secretary of State no later than 4:00 p.m. on August 5, 2020. Their nominating petitions must contain no fewer than 5,000 signatures of qualified Ohio electors.[2] Amended Verified Compl., at ¶29 (Doc. 8, PageID #58-59).

For these nominating petitions, the Petition Circulators are required to sign a statement under penalty of perjury saying: (a) the circulator witnessed the affixing of each signature on the petition; (b) all signers, to the best of the circulator's knowledge and belief, were qualified to sign; and (c) each signature is, to the best of the circulator's knowledge and belief, the signature of the person whose signature it purports to be.[3] Circulators of nominating petitions for the Independent Candisates must therefore collect and witness the signature of each elector in person. Amended Verified Compl., at ¶¶30-31 (Doc. 8, PageID #59).

---

[1] Ohio Rev. Code §3501.01(F).
[2] Ohio Rev. Code §3513.257.
[3] Ohio Rev. Code §3501.38(E).

[2]

To form the Green Party of Ohio as a minor political party in the State of Ohio, the Petition Circulators must file their party formation petition with the Ohio Secretary of State. It is also required that the party formation petition be filed no later than 4:00 p.m. on June 30, 2020.[4] Amended Verified Compl., at ¶32 (Doc. 8, PageID #59).

For this minor party formation petition, the Petition Circulators must sign a statement under penalty of perjury saying: (a) the circulator witnessed the affixing of each signature on the petition; (b) all signers, to the best of the circulator's knowledge and belief, were qualified to sign; and (c) each signature is, to the best of the circulator's knowledge and belief, the signature of the person whose signature it purports to be.[5] Circulators of a minor party formation petition for the Green Party of Ohio must therefore collect and witness the signature of each elector in person. Amended Verified Compl., at ¶¶33-34 (Doc. 8, PageID #59).

On March 9, 2020, Defendant DeWine authored and signed Executive Order 2020-01D in his capacity as Governor, declaring an emergency in the entire State of Ohio "to protect the well-being of the citizens of the Ohio from the dangerous effects of COVID-19, to justify the authorization of personnel of State departments and agencies as are necessary, to coordinate the State response to COVID-19, and to assist in protecting the lives, safety, and health of the citizens of Ohio."[6] Amended Verified Compl., at ¶40 (Doc. 8, PageID #60).

Before this, the Petition Circulators were circulating and collecting signatures on nominating petitions to place the Independent Candidates on the November 3, 2020 general

---

[4] Ohio Rev. Code §3517.012(A).
[5] Ohio Rev. Code §3517.011.
[6] https://governor.ohio.gov/wps/portal/gov/governor/media/executive-orders/executive-order-2020-01-d

election ballot, and were circulating and collecting signatures on a petition to form the Green Party of Ohio as a minor political party.  Amended Verified Compl., at ¶41 (Doc. 8, PageID #60).

On March 12, 2020, Defendant Acton ordered that "mass gatherings are prohibited in the State of Ohio", and defined mass gatherings as "any event or convening that brings together one hundred (100) or more persons in a single room or single space at the same time, such as . . . confined indoor or outdoor space[s] . . . [including] parades, fairs, and festivals."[7]  Although this social distancing order said that it did not apply to "gatherings for the . . . expression of First Amendment protected speech", the Petition Circulators say that such language is vague and failed to give them fair notice as to whether circulating petitions was allowed or prohibited.  Amended Verified Compl., at ¶43 (Doc. 8, PageID #61).

On March 17, 2020, Defendant Acton issued an Amended Order extending her ban on mass gatherings to groups of fifty (50) or more persons and ordered that most recreational sites in Ohio be closed, including "bowling alleys; health clubs/fitness centers/workout facilities/gyms/yoga studios; indoor trampoline parks; indoor water parks; movie theatres and performance theatres; public recreation facilities and indoor sports events.[8]  Although this amended social distancing order said that it did not apply to "gatherings for the . . . expression of First Amendment protected speech", the Petition Circulators say that such language is vague and failed to give them fair notice as to whether circulating petitions was allowed or prohibited.  Amended Verified Compl., at ¶50 (Doc. 8, PageID #62).

---

[7] https://content.govdelivery.com/attachments/OHOOD/2020/03/12/file_attachments/1399681/ODH%20Order%20to%20Limit%20and%20Prohibit%20Mass%20Gatherings,%203.12.20.pdf
[8] https://coronavirus.ohio.gov/wps/wcm/connect/gov/dd504af3-ae2c-4d2e-b2bd-02c1a3beed89/Director%27s+ Order-+Amended+Mass+Gathering+3.17.20+%281%29.pdf?MOD= AJPERES&CONVERT_TO=url&CACHEID=ROOTWORKSPACE.Z18_ M1HGGQO9DDDDM3000-dd504af3-ae2c-4d2e-b2bd-02c1a3beed89-n6XVz7y

On March 22, 2020, Defendant Acton issued a "Stay at Home" social distancing order that everyone in the State of Ohio "stay at home or at their place of residence" unless subject to a specific exception for "essential" services, businesses, and operations; that everyone maintain at least a six foot social distance between themselves and others outside "a single household or living unit"; and that completely banned gatherings of ten or more people.[9]  Although this social distancing order said that "First [A]mendment protected speech" was essential, the Petition Circulators say that such language is vague and failed to give them fair notice as to whether circulating petitions was allowed or prohibited.  Amended Verified Compl., at ¶52 (Doc. 8, PageID #63).

On April 30, 2020, Defendant Acton issued a "Stay Safe Ohio" social distancing order that still required the general public to abide by "Social Distancing Requirements as defined in this Order . . . [for] maintaining six-foot social distancing . . . [between] members of the public", and also alleged that it did not apply to "petition or referendum circulators".[10]  The Petition Circulators say that this order is self-contradictory, vague, and failed to give them fair notice as to whether circulating petitions was allowed or prohibited.  Defendant Acton's purported exclusion of petition circulators from her "Stay Safe Ohio" order is overshadowed by requiring the general public to continue six-foot social distancing.  The Petition Circulators say that they cannot gather petition signatures while social distancing orders continue because fewer people congregate in public places and fewer people will open their doors to strangers.  Amended Verified Compl., at ¶¶53-54 (Doc. 8, PageID #63).

---

[9] https://coronavirus.ohio.gov/static/DirectorsOrderStayAtHome.pdf
[10] https://coronavirus.ohio.gov/static/publicorders/Directors-Stay-Safe-Ohio-Order.pdf

No person may violate any rule the director of health or department of health adopts or any order the director or department of health issues under this chapter to prevent a threat to the public caused by a pandemic, epidemic, or bioterrorism event." A violation of this statute is a second-degree misdemeanor punishable by a fine of up to $750.00, up to 90 days in jail, or both.[11] Amended Verified Compl., at ¶44 (Doc. 8, PageID #61).

Defendant LaRose has been enforcing the orders of defendants DeWine and Action as they affect collecting signatures on nominating petitions to place plaintiffs Hawkins and Hunter on the November 3, 2020 general election ballot, and as they affect collecting signatures on a petition to form the Green Party of Ohio as a minor political party. Amended Verified Compl., at ¶55 (Doc. 8, PageID #64).

Defendants' actions deprived the Petition Circulators of adequate time to collect signatures on nominating petitions for the Independent Candidates, and then file the petitions with the Ohio Secretary of State. Amended Verified Compl., at ¶56 (Doc. 8, PageID #64).

Defendants' actions also deprived the Petition Circulators of adequate time to collect signatures on the minor party formation petition for the Green Party of Ohio, and then file the petition with the Ohio Secretary of State. Amended Verified Compl., at ¶57 (Doc. 8, PageID #64).

## II.     ARGUMENT

### A.     PLAINTIFFS' COMPLAINT STATES CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

#### 1.     Standard of Review.

To survive a Rule 12(b)(6) motion to dismiss, a complaint is not required to provide "[the] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible

---

[11] Ohio Rev. Code §3701.352.

on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570,  127 S. Ct. 1955, 1974 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal,  556  U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

In deciding a motion to dismiss, the trial court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009).   The trial court need not accept a "bare assertion of legal conclusions".  Columbia Natural Res., Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir. 1995).  However, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. at 1964).   Factual allegations in the complaint "need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible."  Hayward v. Cleveland Clinic Foundation, 759 F.3d 601, 608 (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949).  Legal conclusions can provide the framework of a complaint where they are supported by factual allegations.  Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950.

**2.  The Petition Circulators Have Standing To Sue On Their Minor Party Petition Claim.**

Defendants' argument that the Petition Circulators "do not claim voting allegiance with the Green Party or Green Party candidates and they do not purport to act on behalf of the Green Party" is a red herring.  The Green Party does not exist in Ohio because its candidate for Governor failed to receive three percent (3%) of the total vote cast for this office in the 2018 general election.  It was "not eligible to 'remain' a political party based on the outcome of the election."  See State ex

rel. Fockler v. Husted, 150 Ohio St.3d 422, 2017-Ohio-224, 82 N.E.3d 1135, at ¶15.  The defendants cannot argue that the Petition Circulators lack standing because they have no voting allegiance to, and do not act on behalf of, a party that does not exist in Ohio.

To establish Article III standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, ___ U.S.___, 136 S.Ct. 1540, 1547 (2016).  To establish injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'."  Spokeo, ___ U.S.___, 136 S.Ct. at 1548.  For an injury to be "particularized", it "must affect the plaintiff in a personal and individual way."  Id., ___ U.S.___, 136 S.Ct. at 1548.  A "concrete" injury must be "real" and not "abstract."  Id., ___ U.S.___, 136 S.Ct. at 1548.

The State of Ohio recognizes the use of popular democratic measures to nominate candidates for election to public office.  Nominating candidates by petition in the State of Ohio was first recognized in 1929 when the definition of "qualified political party" in Ohio Gen. Code §4785-61 was amended to provide that "those political associations that presented nominating petitions supported by signatures from voters equal in number to 15% of the total vote for Governor in the preceding election" would be qualified political parties.

Ohio Rev. Code §§3501.38(A) through 3501.38(C) provide that electors qualified to vote for a candidate who is the subject of a petition shall sign the petition; signatures shall be affixed in ink, and each signer may also print the signer's name to clearly identify the signer's signature; and each signer shall place on the petition after the signer's name the date of signing and the location of the signer's voting residence.

[8]

To appear on the November 3, 2020 general election ballot, Ohio Rev. Code §3513.257 requires that an independent candidate for President of the United States file his or her nominating petition with the Ohio Secretary of State no later than 4:00 p.m. on August 5, 2020, and that the nominating petition contain no fewer than 5,000 signatures from qualified Ohio electors.

Persons forming a minor political party are required by Ohio Rev. Code §§3517.01(A) and 3517.012(A) to file a party formation petition with the Secretary of State, and that the petition must: (a) be signed by qualified electors equal to at least 1 percent of the total vote for governor or nominees for presidential electors at the most recent election for such office; (b) be signed by not fewer than 500 qualified electors from each of at least onehalf of the congressional districts in the state; (c) declare the petitioners' intention to organize a minor political party and participate in the succeeding general election that occurs more than 125 days after the filing date;  (d) designate a committee of not less than three nor more than five of the petitioners, who will represent the petitioners in all matters relating to the petition; and (e) name the prospective minor political party in the declaration, which must not be similar to that of an existing party name.  Upon filing the petition, the party comes into legal existence as a minor political party and is entitled to nominate candidates to appear on the ballot in a general election on odd or even-numbered years occurring more than 125 days after the filing date.

Ohio's "COVID-19" emergency orders prevent the personal contact that the Petition Circulators need for compliance with Ohio Rev. Code §§3501.38(A) through 3501.38(C); with Ohio Rev. Code §3513.257; and with Ohio Rev. Code §§3517.01(A), 3517.012(A), and 3517.011. The defendants argue that "the  Director's  COVID-19  orders  have  universally exempted First Amendment activities including petition circulation", and that "The Sixth Circuit put that to rest in *Thompson*", but the Plaintiffs disagree.

[9]

Thompson v. DeWine, No. 20-3526, 2020 WL 2702483 (6th Cir., May 26, 2020), decided a motion for a stay pending appeal, and was not a decision on the merits. In *Thompson*, several Ohio plaintiffs sought to place proposed local initiatives and constitutional amendments on the November 3, 2020 general election ballot. The district court found that State enforcement of petition signature requirements prevented qualifying the plaintiffs' constitutional amendments and initiatives because signature collection was impeded by Ohio's emergency "COVID-19" social distancing orders. It held that Ohio's strict enforcement of its ballot regulations imposed a severe burden on plaintiffs' First Amendment rights due to the pandemic. Accordingly, the district court enjoined enforcement of the petition signature requirements. Thompson, 2020 WL 2702483, at *3.

In granting a stay pending appeal, the Sixth Circuit rejected the notion that Ohio imposed restrictions that excluded or virtually excluded initiatives from the ballot because:

> Ohio specifically exempted conduct protected by the First Amendment from its stay-at-home orders. From the first Department of Health Order issued on March 12, Ohio made clear that its stay-at-home restrictions did not apply to "gatherings for the purpose of the expression of First Amendment protected speech[.]" Ohio Dep't of Health, Order to Limit and/or Prohibit Mass Gatherings in the State of Ohio ¶ 7 (March 12, 2020). And in its April 30 order, the State declared that its stay-at-home restrictions did not apply to "petition or referendum circulators[.]" Ohio Dep't of Health, Director's Order that Reopens Businesses, with Exceptions, and Continues a Stay Healthy and Safe at Home Order ¶ 4 (April 30, 2020).

Thompson, 2020 WL 2702483, at *3.

The Sixth Circuit did not consider that defendant Acton's March 12, 2020, March 17, 2020, and March 22, 2020 orders were unconstitutionally vague. The Supreme Court has said that:

> A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required. . . . Even when speech is not at issue, the void

[10]

> for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly . . . When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech.

FCC v. Fox Television Stations, Inc., 567 U.S. 239, 253-54, 132 S. Ct. 2307, 2317 (2012). Fair notice means that a person of ordinary intelligence has a reasonable opportunity to understand what conduct is allowed or prohibited. United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 1845 (2008). A failure to give fair notice violates due process. Hill v. Colorado, 530 U.S. 703, 732, 120 S.Ct. 2480, 2498 (2000). It renders such regulations void for vagueness. Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858 (1983).

Although Defendant Acton's social distancing orders of March 12, 2020 and March 17, 2020 permitted "gatherings for the . . . expression of First Amendment protected speech", this language was unconstitutionally vague. They failed to expressly permit circulating petitions, and thereby failed to give the Petition Circulators fair notice by denying them a reasonable opportunity to understand whether they were allowed or prohibited to circulate petitions. These orders exposed the Petition Circulators to criminal liability under Ohio Rev. Code §3701.352, thereby denying them due process, and are consequently void.

Although Defendant Acton's social distancing order of March 22, 2020 said that "First [A]mendment protected speech" was essential, this language was also unconstitutionally vague. It failed to expressly permit circulating petitions, thereby failed to give the Petition Circulators fair notice by denying them a reasonable opportunity to understand whether they were allowed or prohibited to circulate petitions. This order exposed the Petition Circulators to criminal liability under Ohio Rev. Code §3701.352, thereby denying them due process, and is consequently void.

The Sixth Circuit did not consider that defendant Acton's social distancing order of April 30, 2020 order was unconstitutionally vague because her exclusion of petition circulators was overshadowed by her continuing six-foot social distancing.  This is a contradiction because circulators cannot gather petition signatures while electors are following social distancing orders. Overshadowing is a contradiction that makes someone uncertain as to his rights.  See Federal Home Loan Mortg. Corp. v. Lámar, 503 F.3d 504, 511 (6th Cir. 2007).  It is a form of vagueness that failed to give the Petition Circulators fair notice by them a reasonable opportunity to understand whether they were allowed or prohibited to circulate petitions.  This order exposed the plaintiffs to criminal liability under Ohio Rev. Code §3701.352, thereby denying them due process, and is consequently void.

 After the Sixth Circuit's decision in *Thompson*, the Supreme Court denied an application for injunctive relief in South Bay United Pentecostal Church v. Newsome, No. 19A1044, 2020 WL 2813056 (Sup. Ct., May 29, 2020).  The Court found it "quite improbable" that a First Amendment exception could be carved out of a content-neutral limit on public gatherings (like Ohio's) during the "COVID-19" crisis.  Newsome, 2020 WL 2813056, at *1-*2.

Hence,  the Petition Circulators  have  no lawful procedure by which they may qualify the Independent Candidates for the November 3, 2020 general election ballot.  The Petition Circulators have no lawful procedure to re-form the Green Party of Ohio as a minor party.

Judicial relief is justified because Ohio law, under the Defendants' orders and the current crisis, cannot withstand constitutional scrutiny.  Strict scrutiny is applied to a State's law that severely burdens ballot access and intermediate scrutiny to a law that imposes lesser burdens. Anderson v. Celebrezze, 460 U.S. 780, 103 S.Ct. 1564 (1983);  Burdick v. Takushi, 504 U.S. 428, 112 S.Ct. 2059 (1992).

[12]

The Sixth Circuit applied the *Anderson-Burdick* test in <u>Libertarian Party of Ohio v.</u> <u>Blackwell</u>, 462 F.3d 579, 593 (6th Cir. 2006), and found that Ohio's signature collection mechanism for political parties placed a severe burden on their First Amendment rights that could not be justified. This should be the same result where Ohio's signature collection requirements, under current circumstances, make it impossible to for the Petition Circulators to qualify the Independent Candidates for the November 3, 2020 general election ballot or form the Green Party of Ohio as a minor party.

### 3. <u>The Independent Candidates Have Standing To Sue On Their Nominating Petition Claim.</u>

Defendants concoct an argument that "Hawkins and Hunter also fail to allege standing . . . because they assert independent status, not Green Party affiliation." As stated above, the Green Party does not now exist in Ohio. The Defendants themselves say that "whether the Green Party is [re-formed as] a minor party will have no impact on whether Hawkins and Hunter can run for President as independent candidates in the 2020 November election."

In <u>Esshaki v. Whitmer</u>, No. 20-1336, 2020 WL 2185553 (6th Cir., May 5, 2020), Michigan candidates for public office were stymied by state requirements for in-person petitions to place their names on the August 2020 primary ballot. Michigan's emergency social distancing orders, responding to the "COVID-19" pandemic, barred them from collecting the petition signatures they needed between imposition of the first emergency order on March 23, 2020 and the April 21, 2020 deadline for filing petition signatures. The Sixth Circuit found that:

> the combination of the State's strict enforcement of the ballot access
> provisions and the Stay-at-Home Orders imposed a severe burden
> on the plaintiffs' ballot access, so strict scrutiny applied, and even
> assuming that the State's interest (i.e., ensuring each candidate
> has a reasonable amount of support) is compelling, the provisions
> are not narrowly tailored to the present circumstances. Thus, the

[13]

> State's strict application of the ballot-access provisions is unconstitutional as applied here.

Esshaki, at *1-*2.

Ohio's signature collection requirements, under the State's COVID-19 emergency orders, make it impossible to for the Independent Candidates to qualify for the November 3, 2020 general election ballot. Those orders place a severe burden on their First Amendment rights which cannot be justified. Accordingly, the Independent Candidates have suffered injuries in fact that are fairly traceable to the challenged conduct of the Defendants, and which likely to be redressed by a favorable judicial decision.

**4. None Of The Plaintiffs' Claims Are Disposed Of By _Thompson v. DeWine_.**

In _Thompson_, Sixth Circuit did not consider whether Defendant Acton's social distancing order exclusions were unconstitutionally vague. These are the claims raised in the Amended Verified Complaint. Therefore, _Thompson_ is not dispositive of the Plaintiffs' claims in this case.

In Duncan v. LaRose, No. 2:20-cv-2295 (S.D. Ohio, Jun. 4, 2020) (Slip Op., Doc. 16) (Watson, J.), the plaintiff sought injunctive and declaratory relief against the defendants because Ohio Rev. Code §§3513.262 and 3513.263 unconstitutionally restricted his rights related to signature-gathering requirements for independent candidate nominating petitions. The plaintiff asserted that this was compounded by Ohio's Stay-at-Home Order. The court ruled that he was not entitled to relief because, under _Thompson_, Ohio's Stay-at-Home Order "specifically exempted conduct protected by the First Amendment". (Doc. 16, PageID #80.) However, the court did not consider that Defendant Acton's social distancing order exclusions were unconstitutionally vague. Therefore, _Duncan_ is not dispositive of the Plaintiffs' claims in this case.

**5. The Amended Verified Complaint States Valid Claims For Relief.**

Defendants miscite <u>Hartman v. Acton</u>, No. 2:20-CV-1952, 2020 U.S. Dist. LEXIS 72068 (S.D. Ohio, Apr. 21, 2020) (Marbley, J.), for the proposition that Defendant Acton's social distancing orders affecting petition circulators were not vague.  In *Hartman,* the trial court considered Defendant Acton's April 2, 2020 Amended Stay-at-Home Order and said that:

> Plaintiffs have not sufficiently alleged that they did not have adequate notice of the proscribed conduct or that there is a risk of arbitrary, capricious, or discriminatory enforcement. The Order makes clear that all businesses, except essential businesses as defined in the Order, must cease during the applicable time period. . . . The Order provides a complete list of all businesses deemed essential. These include healthcare and public health operations, human services operations, essential infrastructure, essential government functions . . . The Order provides detailed definitions for each of these categories and makes clear that business operations that do not fall under these categories are prohibited.

<u>Id.</u>, 2020 U.S. Dist. LEXIS 72068, at *16.  The Amended Stay-at-Home Order included "First [A]mendment protected speech" among Essential Businesses and Operations, but never said whether circulating petitions was included.[12]

Defendants then argue that "Plaintiffs failed to bring specific, factual allegations that they did not know whether circulating petitions was either allowed or prohibited under the Director's Orders."  As the Supreme Court held in *Erickson*, specific facts are not necessary as long as the complaint's allegations give the defendant fair notice of what the claim is and the grounds upon which it rests.  This is exactly what the Plaintiffs did in their Amended Verified Complaint by asserting that her orders were "vague and failed to give the plaintiffs . . . fair notice as to whether circulating petitions was allowed or prohibited".

---

[12]  https://coronavirus.ohio.gov/static/publicorders/Directors-Stay-At-Home-Order-Amended-04-02-20.pdf

[15]

Fair notice means that a person of ordinary intelligence has a reasonable opportunity to understand what conduct is allowed or prohibited. United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 1845 (2008). Defendants cannot simply say that Defendant Acton's social distancing orders were not vague, and therefore gave the Plaintiffs fair notice. They should know that what is "reasonable" is a question of fact. See Smith v. Pee Pee Twp., No. 2:04-cv-298, 2005 WL 2211260 (S.D. Ohio, Sept. 7, 2005). Thus, the Amended Verified Complaint notified the Defendants as to what Plaintiffs' claims are and the ground upon which they rest.

## B. PLAINTIFFS ARE ENTITLED TO THE TEMPORARY RESTRAINING ORDERS AND/OR PRELIMINARY INJUNCTIONS REQUESTED.

### 1. Defendant Acton's Social Distancing Orders Barred The Petition Circulators From Complying With In-Person Petition Signing And Filing Requirements.

If a state imposes "severe restrictions" on constitutional rights, then the state "must pass strict scrutiny to survive, meaning that it must be 'narrowly drawn to advance a state interest of compelling importance'." Ohio Council 8 Am. Fed'n of State v. Husted, 814 F.3d 329, 335 (6th Cir. 2016) (quoting Norman v. Reed, 502 U.S. 279, 112 S.Ct. 698 (1992)). Strict scrutiny is reserved for cases in which the State has "totally denied the electoral franchise to a particular class of [electors]." Mays v. LaRose, 951 F.3d 775, 786 (6th Cir. 2020).

In this case, Defendant Acton's social distancing orders barred the Petition Circulators from complying with in-person signing and filing requirements for nominating and party formation petitions. Her purported exclusions for First Amendment activity are void for vagueness.

### 2. The State's Regulatory Interests Do Not Outweigh The Burden It Has Imposed On The Plaintiffs.

In Libertarian Party of Ohio v. Blackwell, 462 F.3d 579, 593 (6th Cir. 2006), the court found that the severe burden that Ohio's signature collection mechanism placed on First Amendment rights could not be justified by any compelling concern. This should be the same

[16]

result where Ohio's signature collection requirements, under the State's COVID-19 emergency orders, make it impossible for the Petition Circulators to qualify the Independent Candidates for the November 3, 2020 general election ballot or form the Green Party of Ohio as a minor party.

In <u>Libertarian Party of Ohio v. Brunner</u>, 462 F.Supp.2d 1006 (S.D. Ohio 2008), after finding Ohio's unconstitutional ballot access requirements from <u>Blackwell</u> had not been corrected, this Court ordered the Libertarian Party onto the ballot holding that "in the absence of constitutional ballot access standards, when the 'available evidence' establishes that the party has 'the requisite community support,' this Court is required to order that the candidates be placed on the ballot. <u>Id.</u>, 462 F.Supp.2d at 1015. <u>See also</u> <u>Libertarian Party of Ohio v. Husted</u>, No. 2:13-cv-953, 2014 WL 11515569, at *5 (S.D. Ohio, Jan. 7, 2014) ("the evidence tends to show the LPO, OPG, and CPO have the requisite modicum of community support to warrant placement on the ballot as a matter of right under the First and Fourteenth Amendments").

### 3. **The Defendants Have Violated Plaintiffs' Due Process Rights.**

In *Husted*, this Court ruled that Ohio's changes to its election laws in the middle of the 2013-14 election cycle violated the Due Process Clause. <u>Id.</u>, 2014 WL 11515569, at *7. Ohio had in enacted a law in November 2013 that altered ballot access for minor parties in the 2014 general election. This Court found that it interfered with "Plaintiffs' legitimate expectation that, having complied with the process that was (and remains) in place, they would have the opportunity to reap the political benefits of participating in the primary." <u>Id.</u>, 2014 WL 11515569, at *7. This Court further remarked that:

> [t]he Ohio Legislature moved the proverbial goalpost in the midst of the game. Stripping Plaintiffs of the opportunity to participate in the 2014 primary in these circumstances would be patently unfair.

<u>Id.</u>, 2014 WL 11515569, at *7.

[17]

Ohio's emergency "COVID-19" orders do the same. It is patently unfair to expect the plaintiffs to comply with Ohio's in-person petition signature and filing requirements, while abiding by Ohio's new social distancing rules, because it is impossible to do so.

**4. The Defendants Have Violated Plaintiffs' Rights To Equal Protection.**

The Equal Protection Clause applies when a state either classifies voters in disparate ways or places restrictions on the right to vote. Obama for Am. v. Husted, 697 F.3d 423, 428 (6th Cir. 2012). In this case, the Plaintiffs are being treated differently from petition circulators who have gathered signatures and filed their petitions before Ohio's emergency "COVID-19" orders. The latter were not barred from complying with Ohio's in-person petition signature and filing requirements, while the former are barred from doing so by Ohio's social distancing rules.

**5. The Plaintiffs' Claims Are Not Barred By Laches.**

A party asserting laches must show: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc., 270 F.3d 298, 320 (6th Cir. 2001). Defendants' bare contention that "Plaintiffs could have done something months earlier than waiting until now" is not enough to show a lack of due diligence. It is absurd to suggest that Plaintiffs' failure to foresee the COVID-19 pandemic evidences a lack of due diligence. The time to file the minor party formation petition or the Independent Candidates' nominating petitions has not yet run, and will not do so until June 30 and August 5, respectively. So, the Plaintiffs did not lack due diligence by bringing this action before those deadlines.

For the same reason, the "public interest in orderly elections" is not prejudiced. Plaintiffs could not foresee the COVID-19 pandemic. The minor party formation petition or the Independent Candidates' nominating petition filing deadlines have not yet run. Defendants are the ones who

[18]

have disrupted orderly elections by ordering social distancing that impede Ohio's in-person petition signature and filing requirements. Plaintiffs are timely seeking relief against this disruption.

### III.     CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court deny Defendants' motion to dismiss and grant Plaintiffs' motions to: (a) enjoin Defendants' enforcement of Ohio Rev. Code §§3501.38 and 3513.257, with respect to Plaintiffs Howard "Howie" Hawkins and Dario Hunter as independent candidates for President of the United States, requiring in-person signing of their nominating petitions, in-person collection of their nominating petitions' signatures, and in-person filing of their nominating petitions with the Ohio Secretary of State no later than 4:00 p.m. on August 5, 2020, or (b) order placement of Plaintiffs Howard "Howie" Hawkins and Dario Hunter on the November 3, 2020 general election ballot.

Plaintiffs also request that this Court: (a) enjoin enforcement of Ohio Rev. Code §§3517.01, 3517.011, and 3517.012, with respect to forming the Green Party of Ohio as a minor political party, requiring in-person signing of its petition for minor political party formation, in-person collection of its petition's signatures, and in-person filing of its petition with the Ohio Secretary of State no later than 4:00 p.m. on June 30, 2020, or (b) order formation of the Green Party of Ohio as a minor political party in the State of Ohio.

Plaintiffs further request a declaratory order, pursuant to 28 U.S.C. §2201, that the enforcement of Ohio Rev. Code §§3501.38 and 3513.257, and the enforcement of Ohio Rev. Code §§3517.01, 3517.011, and 3517.012, are unconstitutional as applied in this case under the defendants' emergency "COVID-19" orders.

Dated: June 15, 2020                        Respectfully submitted,

*/s/ Constance A. Gadell-Newton*
Constance A. Gadell-Newton (0085373)

*/s/ Robert J. Fitrakis*
Robert J. Fitrakis (0076796)
FITRAKIS & GADELL-NEWTON, LLC
1021 East Broad Street
Columbus, OH  43205
Phone: (614) 307-9783
Fax: (614) 929-3513
E-Mail: fgnlegal@gmail.com
*Trial Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

       I hereby certify that a true copy of the foregoing was filed using the CM/ECF System on June 15, 2020, which will automatically serve Julie M. Pfeiffer, Michael Allan Walton, and Renata Y. Staff, Ohio Attorney General's Office, 30 E. Broad Street, 16th Floor, Columbus, OH 43215, attorneys for defendants.

*/s/ Robert J. Fitrakis*
Robert J. Fitrakis (0076796)

[20]