IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Howard "Howie" Hawkins, *et al.*, | Case No: 2:20-cv-2781 |
| Plaintiffs, | Judge Graham |
| v. | Magistrate Judge Vascura |
| Richard Michael DeWine, in his official capacity as the Governor of Ohio, *et al.*, | |
| Defendants. | |

Opinion and Order

This case presents the question of whether it is constitutional to apply certain Ohio election laws – those requiring in-person signatures of petitions and in-person witnessing by circulators of the affixing of signatures – during the time of the COVID-19 pandemic and Ohio's stay-at-home orders. Plaintiffs wish to gather signatures for petitions to place independent candidates for President of the United States on the ballot and to have the Green Party recognized as a minor political party in advance of the November 3, 2020 general election. They allege that the stay-at-home orders have made it impossible for them to collect and witness the number of signatures required under Ohio law.

Plaintiffs seek a preliminary injunction enjoining the State from enforcing its in-person signature and witnessing requirements and ordering the State to place the independent candidates on the ballot and to recognize the Green Party as a minor political party. The State seeks dismissal of this suit, arguing that its stay-at-home orders create an express exemption for First Amendment activity and that plaintiffs' free speech rights therefore have not been violated.

For the reasons stated below, the court grants the State's motion to dismiss.

I. Background

A. Procedural History

Plaintiffs filed a verified complaint on May 29, 2020, along with a motion for a temporary restraining order and preliminary injunction. On June 2 the court conducted a telephone conference with the parties to establish an expedited briefing schedule in light of the June 30, 2020 deadline for plaintiffs to submit a petition to form a minor political party. On June 9 plaintiffs filed an amended verified complaint and amended motion for a temporary restraining order and preliminary injunction.

1

The court slightly extended the briefing schedule to allow the State time to address the amended filings. On June 12, the State filed a combined motion to dismiss the amended complaint and response brief to plaintiffs' amended motion for a temporary restraining order and preliminary injunction. The parties submitted additional briefs on June 15 and 19.

### B. The Parties

In their amended complaint, plaintiffs Howard "Howie" Hawkins and Dario Hunter (the "Independent Candidate Plaintiffs") allege that they seek to qualify to run as independent candidates for United States President in November 2020. Plaintiffs Joseph R. DeMare, Nathaniel Lane, Brett Joseph, Becca Calhoun and Anita Rios (the "Circulator Plaintiffs") allege that they are registered Ohio voters who are experienced circulators of nominating petitions. They seek to gather signatures to nominate candidates for the November 2020 ballot, as well as to form the Green Party as a minor political party. The Circulator Plaintiffs allege that each of them fall within "high-risk categories subject to life-threatening complications from COVID-19." Doc. 8 at ¶¶ 19-23.

Named as defendants are Governor Mike DeWine, Secretary of State Frank LaRose, and Dr. Amy Acton, former Director of the Ohio Department of Health.

### C. Ohio Election Law

Under Ohio law, an individual seeking to appear on the ballot as an independent candidate for President must file a nominating petition with the Secretary of State no later than 90 days before the day of the general election. O.R.C. § 3513.257. For this election cycle, the nominating petition is due by August 5, 2020. The petition "shall be signed by no less than five thousand qualified electors." O.R.C. § 3513.257(A). An independent candidate may begin collecting signatures one year before the date the nominating petition is filed. O.R.C. § 3513.263 ("A signature on a nominating petition is not valid if it is dated more than one year before the date the nominating petition was filed.").

A group of voters may become a political party if "at the most recent regular state election, the group polled for its candidate for governor in the state or nominees for presidential electors at least three per cent of the entire vote cast for that office." O.R.C. § 3517.01(A)(1)(a). The Green Party's candidate for governor did not receive 3% of the total vote cast in 2018, and it lost its minor party status. O.R.C. § 3501.01(F). To regain its status, the Green Party may file a "party formation petition that is (i) "signed by qualified electors equal in number to at least one per cent of the total vote for governor or nominees for presidential electors at the most recent election for such office" and (ii) "signed by not fewer than five hundred qualified electors from each of at least a minimum of one-half of the congressional districts in this state." O.R.C. § 3517.01(A)(1)(b). The petition must be

filed more than 125 days before the general election, which makes it due this election cycle by June 30, 2020. O.R.C. § 3517.01(A)(1)(b)(iv). Ohio law does not appear set a timeframe for when signature gathering can begin for party formation petitions, and so the State believes that the Green Party could have begun just as soon as it lost its status after the November 2018 election. See Doc. 11 at p. 5.

Signatures on election petitions "shall be affixed in ink" and be written in a person's "own hand." O.R.C. § 3501.38(B); O.R.C. § 3501.011(A). On each petition paper, the circulator "shall sign a statement made under penalty of election falsification that the circulator witnessed the affixing of every signature, that all signers were to the best of the circulator's knowledge and belief qualified to sign, and that every signature is to the best of the circulator's knowledge and belief the signature of the person whose signature it purports to be." O.R.C. § 3501.38(E)(1). See also O.R.C. § 3517.011 (requiring that a party formation petition comply with the requirements of § 3501.38).

### D. COVID-19 Orders

On January 31, 2020, the Secretary of the United States Department of Health and Human Services determined that the 2019 Novel Coronavirus constituted a "public health emergency." See http://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx.

Governor DeWine signed Executive Order 2020-01D on March 9, 2020 declaring a state of emergency due to the "dangerous effects of COVID-19." Ohio Governor's Executive Order 2020-01D at p. 3 (March 9, 2020). This Order directed the Department of Health to issue appropriate guidelines.

Several orders from the Director of the Department of Health soon followed. On March 12, 2020, Dr. Acton issued an Order to Limit and/or Prohibit Mass Gatherings, defined as a convening together of 100 or more persons in a single room or space at the same time. On March 17, Dr. Acton amended the March 12 Order to define mass gatherings as a convening together of 50 or more persons. Both the original and amended orders expressly exempted "First Amendment protected speech" from their scope: "This Order does not apply to and/or excludes religious gatherings, gatherings for the purpose of the expression of First Amendment protected speech, weddings and funerals." Ohio Dep't Health, Order to Limit and/or Prohibit Mass Gatherings in the State of Ohio ¶ 7 (March 12, 2020); Ohio Dep't Health, Amended Order to Limit and/or Prohibit Mass Gatherings and the Closure of Venues in the State of Ohio ¶ 5 (March 17, 2020).

On March 22, Dr. Acton issued a Stay At Home Order, requiring Ohio residents to stay in their place of residence and ordering non-essential businesses and operations to cease. Only essential business and operations could continue. Included in the definition of essential businesses and

operations was "First Amendment protected speech." Ohio Dep't Health, Stay At Home Order ¶ 12.g (March 22, 2020). The Stay At Home Order was amended on April 2, and it too classified First Amendment speech as an essential business or operation exempt from the stay-at-home directives. Ohio Dep't Health, Amended Stay At Home Order ¶ 12.g (April 2, 2020).

On April 30, Dr. Acton issued a Stay Safe Ohio Order, permitting certain businesses and operations to resume activity. The Stay Safe Ohio Order generally prohibited gatherings of more than ten people; however, this prohibition did not apply "to First Amendment protected speech, including petition or referendum circulators." Ohio Dep't Health, Stay Safe Ohio Order ¶ 4 (April 30, 2020).

### E. Claims Asserted and Relief Requested

The amended complaint asserts three claims. The first claim asserts a violation of the First Amendment to the United States Constitution. Plaintiffs allege that the combined effect of the State's COVID-19 orders with the requirements of ink signatures and in-person witnessing for petitions makes it practically impossible for plaintiffs to gather the required number of signatures for their petitions, thereby denying them access to Ohio's election system. Plaintiffs allege that the First Amendment exemption in all of the COVID-19 orders is unconstitutionally vague.

The second claim asserts a violation of plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment. The basis of the claim is unclear from the amended complaint. Plaintiffs argue in a later filing that their equal protection rights have been violated because the COVID-19 orders treat them differently from petition circulators who gathered signatures before the onset of the pandemic. Doc. 12 at p. 18.

The third claim asserts a violation of plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment. Again, the basis of this claim is unclear from the amended complaint, but the plaintiffs later argue that it is a due process violation for the State to change the election laws during the middle of an election cycle. Id. at pp. 17-18.

As a remedy, the complaint seeks a declaration that Ohio's ink signature and in-person witnessing requirements are unconstitutional as applied. The complaint further seeks an injunction barring enforcement of those requirements to plaintiffs, as well as an order requiring the State to place the Independent Candidate Plaintiffs on the November 3, 2020 ballot and to recognize the Green Party as a minor political party.

**II.     Motion to Dismiss Standard of Review**

When considering a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Iqbal, 556 U.S. at 679; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

5

**III.    Discussion**

    **A.**    **Standing**

As an initial matter, the State moves to dismiss the complaint for lack of standing. A party must meet three requirements to establish standing: (1) "he must demonstrate injury in fact – a harm that is both concrete and actual or imminent, not conjectural or hypothetical; (2) he must establish causation – a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant; and (3) he must demonstrate redressability – a substantial likelihood that the requested relief will remedy the alleged injury in fact." Davis v. Detroit Pub. Sch. Cmty. Dist., 899 F.3d 437, 443-44 (6th Cir. 2018) (internal quotation marks omitted).

The State argues that plaintiffs' alleged injuries of not collecting enough signatures by the deadlines is not fairly traceable to defendants' conduct because the COVID-19 orders exempted First Amendment activity and because plaintiffs had plenty of time before the pandemic to collect signatures. Plaintiffs' dilemma, the State argues, is not one of the State's making.

The court finds that the State's arguments do not demonstrate a lack of standing. That an injury may be indirect or that there may other contributing factors does not destroy standing. Parsons v. U.S. Dep't of Justice, 801 F.3d 701, 713-14 (6th Cir. 2015) ("In the nebulous land of 'fairly traceable,' . . . causation means more than speculative but less than but-for . . . ."). Plaintiffs allege that their inability to place the Independent Candidate Plaintiffs on the ballot and to form the Green Party as a minor political party can be traced to Ohio's ink signature and in-person witnessing requirements and to its stay-at-home orders. They allege that they had begun collecting signatures before the pandemic started, but had stop when the first COVID-19 order was issued. See Doc. 8 at ¶ 41. Plaintiffs contend that were it not for these restrictions imposed by the State, their efforts to get on the ballot would have been successful.

The court finds that these allegations sufficiently support a fairly traceable connection between the alleged injury and defendants' conduct at the pleading stage. See United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 689 (1973) (even an "attenuated line of causation to the eventual injury" is sufficient to satisfy standing requirements at the pleading stage).

    **B.**    **First Amendment Claim**

First Amendment challenges to state election regulations are reviewed under the Anderson-Burdick framework. Schmitt v. LaRose, 933 F.3d 628, 639 (6th Cir. 2019); Anderson v. Celebrezze, 460 U.S. 780 (1983); Burdick v. Takushi, 504 U.S. 428 (1992). A court weighs "the character and

magnitude of the burden the State's rule imposes" on a plaintiff's First Amendment rights against "the interests the State contends justify that burden" and considers "the extent to which the State's concerns make the burden necessary." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358 (1997) (internal quotation marks omitted). Where the challenged regulation imposes "reasonable nondiscriminatory restrictions[,]" courts apply rational basis review and "'the State's important regulatory interests are generally sufficient to justify' the restrictions." Burdick, 504 U.S. at 434 (quoting Anderson, 460 U.S. at 788). Where the regulation or restriction is severe, "such as exclusion or virtual exclusion from the ballot, strict scrutiny applies." Thompson v. DeWine, 959 F.3d 804, 808 (6th Cir. 2020) (per curiam) (citing Burdick, 504 U.S. at 434, and Schmitt, 933 F.3d at 639 ("The hallmark of a severe burden is exclusion or virtual exclusion from the ballot.")). For cases falling between these two extremes, a court weighs the burden imposed by the regulation against "'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" Burdick, 504 U.S. at 434 (quoting Anderson, 460 U.S. at 789).

Ohio's ink signature and in-person witnessing requirements for independent candidate petitions and party formation petitions are the types of nondiscriminatory restrictions that would readily pass constitutional muster under normal circumstances. See Thompson, 959 F.3d at 808 (addressing a challenge to Ohio's ink signature and in-person witnessing requirements for petitions to put initiatives on the ballot and stating, "We have regularly upheld ballot access regulations like those at issue") (citing cases).

But plaintiffs argue that under the stay-at-home and other COVID-19 orders, the petition requirements are so difficult to satisfy that it amounts to virtual exclusion from the ballot for the Independent Candidate Plaintiffs and virtual exclusion from party formation for the Circulator Plaintiffs.

The court, however, finds that the State's COVID-19 orders imposed no significant burden on plaintiffs' signature-gathering rights, let alone virtually excluded them from the ballot. From the very start, the Health Director's orders excluded First Amendment speech from regulation. The Director's March 12 and 17, 2020 orders limiting mass gatherings expressly exempted "First Amendment protected speech" from their scope: "This Order does not apply to and/or excludes . . . gatherings for the purpose of the expression of First Amendment protected speech . . . ." Ohio Dep't Health, Order to Limit and/or Prohibit Mass Gatherings in the State of Ohio ¶ 7 (March 12, 2020); Ohio Dep't Health, Amended Order to Limit and/or Prohibit Mass Gatherings and the Closure of

Venues in the State of Ohio ¶ 5 (March 17, 2020). The Director's March 22 and April 2 stay-at-home orders declared "First Amendment protected speech" to be an essential activity exempt from the mandate that non-essential businesses and operations cease. Ohio Dep't Health, Stay At Home Order ¶ 12.g (March 22, 2020); Ohio Dep't Health, Amended Stay At Home Order ¶ 12.g (April 2, 2020). Finally, the Director's April 30 Stay Safe Ohio Order, generally prohibiting gatherings of more than ten people, did not apply to "First Amendment protected speech, including petition or referendum circulators." Ohio Dep't Health, Stay Safe Ohio Order ¶ 4 (April 30, 2020). In sum, these orders placed no significant burden on plaintiffs' signature-gathering activities.

A similar legal challenge was recently addressed and rejected by the Sixth Circuit in Thompson v. DeWine. There, plaintiffs were individuals who were gathering signatures in support of initiatives to amend the Ohio Constitution and propose municipal ordinances. They argued that their First Amendment rights were violated by the combined effect of the State's COVID-19 orders and Ohio's election law requirements of ink signatures on petitions and in-person witnessing by circulators of the affixing of signatures. The Sixth Circuit, in granting a motion to stay the district court's preliminary injunction pending appeal, held that plaintiffs were not likely to prevail on the merits because "Ohio specifically exempted conduct protected by the First Amendment from its stay-at-home orders. . . . [N]one of Ohio's pandemic response regulations changed the status quo on the activities Plaintiffs could engage in to procure signatures for their petitions." 959 F.3d at 809.

To the extent the plaintiffs here have faced a new reality since March 2020 – of the difficulty of signature-gathering in this time of pandemic, social distancing and changed behavior of electors – the difficulty is not the type of state-imposed burden on speech that the First Amendment prohibits. As the court in Thompson observed,

> Plaintiffs' claim effectively boils down to frustration over failing to procure as many signatures for their petitions (because of social distancing and reduced public crowds) as they would without the pandemic. . . . [J]ust because procuring signatures is now harder (largely because of a disease beyond the control of the State) doesn't mean that Plaintiffs are *excluded* from the ballot. And we must remember, First Amendment violations require state action. U.S. Const. amend. I ("*Congress* shall make no law...." (emphasis added)); 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, *of any State*...." (emphasis added)). So we cannot hold private citizens' decisions to stay home for their own safety against the State.

Id. at 810 (emphasis in original).

Because the challenged election regulations serve compelling state interests, are nondiscriminatory and do not impose a significant burden on speech, they are constitutional.

8

Compare id. at 810-11 (holding that the State's "compelling and well-established interests" in administering its ballot regulations outweigh the burden imposed by the State's ink signature and in-person witnessing requirements for petitions) with Meyer v. Grant, 486 U.S. 414, 428 (1988) (holding that the State of Colorado had failed to justify the burden imposed by a statute which targeted the activity of petition circulators by making it illegal for them to receive compensation). The ink signature and in-person witnessing requirements, as well as the related deadlines, serve legitimate and compelling state interests in a fair and orderly election process. These requirements help ensure the authenticity of signatures and thereby prevent fraud. Thompson, 959 F.3d at 811. And the deadlines give the State an opportunity to verify signatures while leaving time for the plaintiffs, or their associated committees, to challenge any adverse decision regarding their petitions. Id.; see also Timmons, 520 U.S. at 358 ("States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder."); Taxpayers United for Assessment Cuts v. Austin, 994 F.2d 291, 297 (6th Cir. 1993) (states have a strong interest in fairness and integrity of their election processes).

### C. Void for Vagueness

Plaintiffs object that their legal challenge is different from the one in Thompson because that decision did not address whether the First Amendment exemption in Ohio's stay-at-home orders is unconstitutionally vague. Plaintiffs argue that, except for the April 30 Stay Safe Ohio Order, the exemption was so generic in nature that it did not give them fair notice as to whether they were allowed to circulate petitions.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." F.C.C. v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Connally v. General Constr. Co., 269 U.S. 385, 391 (1926). See also United States v. Williams, 553 U.S. 285, 304 (2008) (invalidating a criminal statute because it failed to "provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement"). When speech is regulated, a court should rigorously adhere to the principle against vagueness so that "ambiguity does not chill protected speech." Fox, 567 U.S. at 253-54.

Plaintiffs' argument does not fit the mold of a typical void-for-vagueness challenge. They are not challenging a prohibition, restriction or requirement of an act. Rather, they are challenging an

9

exemption in the State's orders which expressly allows for First Amendment speech; the exemption neither restricts nor requires speech. Plaintiffs fault the exemption for "First Amendment protected speech" for being too generic and argue that a non-vague exemption would have "expressly permit[ed] circulating petitions." Doc. 12 at p. 11.

The court finds that the First Amendment exemption found in the Health Director's March 12, 17, 22 and April 2, 2020 orders is not unconstitutionally vague. The exemption broadly permits and protects First Amendment speech. This is not a case of plaintiffs' conduct falling at the fringes of First Amendment activity. Their petition-circulating activity is core First Amendment speech. See Buckley v. Am. Constitutional Law Found., Inc., 525 U.S. 182, 183 (1999) ("[P]etition circulation is 'core political speech' for which First Amendment protection is 'at its zenith.'") (quoting Meyer, 486 U.S. at 422, 425). Regardless of whatever hypothetical conduct might test the outer limits of the exemption, plaintiffs mount an as-applied challenge and there is no serious dispute that plaintiffs' core speech is at the forefront in receiving the exemption's protection. Cf. Jones v. Caruso, 569 F.3d 258, 276 (6th Cir. 2009) ("[A] party whose conduct is legitimately regulated by a statute or regulation lacks standing to challenge it on the basis that it is unconstitutional as applied to others.").

Nor is this a case of plaintiffs alleging that, despite the stay-at-home orders' clear protection of their First Amendment rights, state officials have acted to the contrary and chilled their exercise of free speech. Plaintiffs do not allege, for instance, that the Secretary of State or election officials have indicated they would reject petition signatures collected during the stay-at-home period. Nor do plaintiffs allege that they attempted to gather signatures during the stay-at-home period but law enforcement officials restricted them from doing so.

The April 30 Stay Safe Ohio Order – exempting "First Amendment protected speech, including petition or referendum circulators" – contains the specific language plaintiffs want. But they argue that even this order is vague because its six-foot social-distancing requirement "overshadowed" or contradicted the First Amendment exemption. Plaintiffs contend that "circulators cannot gather petition signatures while electors are following social distancing orders." Doc. 12 at p. 12.

The First Amendment exemption, however, is not confined to circulators. It applies to all individuals, electors included. If electors should wish to sign a petition, they may. The State is not prohibiting the First Amendment speech of electors.

Yes, the reality for plaintiffs is that changed social behavior could cause some electors to choose not to exercise their right to sign petitions they may have otherwise been inclined to sign. A circulator's job is more difficult during a pandemic. But as the Sixth Circuit explained in Thompson,

10

> There's no reason that Plaintiffs can't advertise their initiatives within the bounds of our current situation, such as through social or traditional media inviting interested electors to contact them and bring the petitions to the electors' homes to sign. Or Plaintiffs could bring their petitions to the public by speaking with electors and witnessing the signatures from a safe distance, and sterilizing writing instruments between signatures.

959 F.3d at 810.

In sum, the court finds that the First Amendment exemptions found in the State's stay-at-home and other COVID-19 orders broadly protect plaintiffs' petition-gathering activity and are not unconstitutionally vague.

### D. Equal Protection and Due Process

The State argues that plaintiffs' equal protection and due process claims fail because the amended complaint does not contain allegations which assert discrete violations of these rights. Rather, the complaint simply restates the alleged violations of plaintiffs' First Amendment rights. The court agrees. The only basis for the equal protection and due process violations alleged in the complaint is that the State's petition regulations, combined with the COVID-19 orders, have denied the plaintiffs' First Amendment rights. See Doc. 8 at pp. 17-18. The complaint does not contain a "short and plain statement of the claim" showing that plaintiffs were denied equal protection or due process of law. Fed. R. Civ. P. 8(a)(2).

Plaintiffs try, outside of the pleadings, to explain the basis of the equal protection and due process claims in their brief in opposition to the motion to dismiss. Even if the court were to consider these allegations, they would not save plaintiffs' claims.

For their equal protection claim, plaintiffs argue that the COVID-19 orders disfavored circulators who had not already collected enough signatures before the onset of the pandemic. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." Center for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 379 (6th Cir. 2011) (internal quotation marks omitted). The court finds that COVID-19 orders did not treat the plaintiffs disparately as compared to other petition circulators. The orders treated all petitions circulators the same, expressly allowing the continued exercise of First Amendment speech. Granted, plaintiffs found themselves in an unfortunate situation – with the pandemic making their signature-gathering efforts more difficult – but this does not constitute an equal protection violation by the State.

11

For their due process claim, plaintiffs argue that the State changed the election laws during the middle of an election cycle and made it "impossible" for them to gather signatures.  Doc. 12 at pp. 17-18 (citing Libertarian Party of Ohio v. Husted, No. 2:13-CV-953, 2014 WL 11515569, at *7 (S.D. Ohio Jan. 7, 2014) (holding that it was a due process violation for the State to retroactively apply a change in election law that would move "the proverbial goalpost in the midst of the game")).  However, the court finds that this claim fails because the State neither changed the statutory requirements for petitions, nor did it its COVID-19 orders prohibit plaintiffs' signature-gathering activities.

### IV.  Conclusion

Accordingly, defendants' motion to dismiss (doc. 11) is granted.  Because plaintiffs' claims fail on the merits, their motion for a temporary restraining order and preliminary injunction (doc. 9) is denied.

s/ James L. Graham<br>
JAMES L. GRAHAM<br>
United States District Judge

DATE: June 24, 2020